STEPHANIE M. PARENT (OSB 925908) (*Pro Hac Vice*)
CENTER FOR BIOLOGICAL DIVERSITY
PO BOX 11374
PORTLAND, OR 97211
TEL: (971) 717-6404
EMAIL: SParent@biologicaldiversity.org

COUNSEL FOR PLAINTIFF
CENTER FOR BIOLOGICAL DIVERSITY

THE UNITED STATES DISTRICT COURT
OF ARIZONA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | |
| *Plaintiff,* | Case No. _____ |
| v. | COMPLAINT FOR DECLARATORY, MANDATORY AND INJUNCTIVE RELIEF |
| UNITED STATES FISH AND WILDLIFE SERVICE; and DEB HAALAND, IN HER OFFICIAL CAPACITY AS SECRETARY OF THE UNITED STATES DEPARTMENT OF THE INTERIOR, | |
| *Defendants.* | |

**INTRODUCTION**

1.      The U.S. Fish and Wildlife Service ("FWS") has disregarded its duties for *more than five years* to complete consultation on two harmful pesticides to protect endangered species and their habitats, as Congress required under the Endangered Species Act ("ESA"). Specifically, Plaintiff, Center for Biological Diversity ("Center") challenges FWS's unreasonable delay to complete the required consultation processes under Section 7 of the ESA. On January 18, 2017, the U.S. Environmental Protection Agency ("EPA")

initiated ESA formal consultation with FWS on the effects of its authorizations of uses of the pesticides chlorpyrifos and diazinon. FWS has a procedural duty to formulate an opinion ("biological opinion") whether the Federal EPA's action "is likely to jeopardize the continued existence of listed species or result in the destruction or adverse modification of critical habitat." 50 C.F.R. § 402.14(g). To date, FWS has not issued a biological opinion for chlorpyrifos or diazinon. These unreasonable delays are in violation of and actionable pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 555(b); 5 U.S.C. §706(1).

2.     Harm to species and critical habitats that should be protected under the ESA will continue until FWS's unreasonable delays are remedied. In its January 2017 Biological Evaluation initiating consultation on registered uses of chlorpyrifos, EPA determined that these uses are *likely to adversely affect* 1,778 of the total protected species analyzed (97% of species) and 780 of the total critical habitats analyzed (98% of critical habitats). Similarly, for diazinon, EPA determined that registered uses are *likely to adversely affect* 1,437 of the total protected species analyzed (78% of species) and 385 of the total critical habitats analyzed (48% of critical habitats). In October 2017, FWS had developed draft biological opinions that concluded that the continued use of chlorpyrifos would result in jeopardy to 1,399 species (88% of species) and adverse modification to 169 species' critical habitat (23% of critical habitats analyzed); for diazinon FWS concluded jeopardy for 175 species (12% of species) and adverse modification of 20 species' critical habitat (3% of critical habitats analyzed). Yet, five years have passed and FWS has not moved expeditiously to ensure the registered uses of chlorpyrifos and diazinon will not drive any

species to extinction or adversely modify critical habitat by completing final biological opinions for each pesticide.

3.      This persistent delay in failing to complete the required consultations allows toxic pesticides to continue to harm the species and contaminate their habitats.

4.      This lawsuit seeks an order compelling FWS to complete the consultations and comply with the ESA by dates certain, no later than six months following this Court's order, and other relief.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (United States as defendant), 28 U.S.C. §§ 2201-02 (declaratory relief), and 5 U.S.C. § 702 (APA).

6.      Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(e)(1)(c) because the Center resides in this district.

7.      Arizona is among the states where EPA has authorized uses of chlorpyrifos and diazinon. Numerous members of the Center reside in or visit Arizona, and, thus, are exposed to uses of chlorpyrifos or diazinon, and their professional and personal interests in endangered and threatened plants, insects, birds, and other wildlife are injured by FWS's unreasonable delay, as alleged more fully below.

## PARTIES

8.      Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("Center") is a non-profit corporation with its headquarters in Tucson, Arizona, and an office in Flagstaff, Arizona, offices throughout the United States, and an office in Mexico. The Center was

founded in 1989 to fight the growing number of threats to biodiversity. The Center's mission is to secure a future for all species, great and small, hovering on the brink of extinction through science, policy, education, and environmental law. The Center has a full-time staff of scientists, lawyers, and other professionals who work exclusively on campaigns to save species and their habitats. The Center is actively involved in species and habitat protection issues throughout the United States, including the U.S. territories, as well as outside of the United States and works to secure protections for all species. One of the Center's flagship programs is its environmental health program, which focuses on the adverse impacts of pesticides, including chlorpyrifos and diazinon. The Center has approximately 89,610 members that live throughout the United States, including Arizona. The Center's members rely on the Center to represent their interests in protecting biodiversity and conserving threatened and endangered species and their habitats.

9.      Center members regularly work in, reside in, visit, observe, recreate, and otherwise enjoy areas across the nation that would be impacted by chlorpyrifos or diazinon and intend to continue doing so in the future. Plaintiffs' members regularly derive professional, aesthetic, spiritual, recreational, economic, conservation, educational, and other benefits from the endangered and threatened species that live in these areas and would be impacted by the pesticides chlorpyrifos or diazinon at issue and intend to continue doing so in the future. The interests of Plaintiffs' members in the species and areas impacted by the pesticides chlorpyrifos or diazinon are and will be directly, adversely, and irreparably affected by Defendants' violations of the law.

10.     For example, Center member Brett Hartl lives in Arizona and is an avid

birder and photographer of wildlife. He is concerned about the effects of chlorpyrifos and diazinon on the California condor, Southwestern willow flycatcher, yellow-billed cuckoo, black-footed ferret, and Chiricahua leopard frog in Arizona. Specifically, he regularly enjoys hiking and recreating throughout Arizona and observing and photographing these species in their natural environment. He is concerned about use of chlorpyrifos and diazinon in Arizona. He also travels widely to observe and photograph birds and other wildlife. He regularly visits southern Texas to observe the whooping crane and Florida to observe the Florida scrub-jay and the Everglades snail kite. He is concerned about the effects of chlorpyrifos and diazinon on these ESA-protected birds as well. EPA determined that chlorpyrifos and diazinon are each "likely to adversely affect" each the species mentioned here.

11.     Additionally, Center member Jeff Miller regularly visits California Central Valley rivers and riparian areas about three to four times a year to observe and enjoy spring run chinook salmon and steelhead trout, green sturgeon (southern DPS), and valley elderberry longhorn beetle in their habitats, which are near many agricultural operations likely to use diazinon. He also regularly observes and enjoys San Joaquin kit fox and California tiger salamander in their natural habitats, which are also near many agricultural operations likely to use diazinon. He is concerned about the use of diazinon in California and its effects on these species, all of which EPA determined diazinon is "likely to adversely affect."

12.     The above-described interests of the Center's members have been and are being adversely affected by FWS's failure to complete consultation on the impacts of

5

continued registrations of chlorpyrifos and diazinon. If FWS completed consultation as required, FWS would detail how the pesticides are affecting endangered and threatened species and their critical habitats and, if necessary, would suggest reasonable and prudent alternatives to protect species.

13.    Unless the requested relief is granted, the Center's members' interests will continue to be adversely affected and injured by FWS's failure to complete the consultations, as well as by the ongoing harm to ESA-protected species and their critical habitats. The injuries described above are actual, concrete injuries that are presently suffered by the Center and its members and will continue to occur unless relief is granted by this Court. These injuries are directly caused by FWS's failure to complete the consultations to ensure that EPA's pesticide registrations do not jeopardize protected species or their critical habitats. The relief sought herein—an order compelling completion of consultation—would redress the Center and its members' injuries. The Center has no other adequate remedy at law.

14.    In addition, FWS's unreasonable delay in completing formal consultations on chlorpyrifos and diazinon also adversely injures the Center's organizational interests. The Center's mission is dedicated to protecting ESA-protected species and their habitats from adverse impacts of pesticides, among other threats. FWS's unreasonable delay in completing consultations by issuing biological opinions has caused the Center to continue to divert resources from addressing other pesticides to focus on the harms caused by chlorpyrifos and diazinon.

15.    Defendant UNITED STATES FISH AND WILDLIFE SERVICE is an

agency of the United States Government within the Department of the Interior. Under the ESA, FWS is the federal agency delegated responsibility from the Secretary of the Interior for completing consultation with federal agencies to ensure that agency actions do not jeopardize the survival and recovery of species protected by the ESA or destroy or adversely affect their critical habitat. 16 U.S.C. § 1536(a)(2).

16.    Defendant, DEB HAALAND, is the Secretary of the United States Department of the Interior and, among other duties, is charged by Congress to consult with agencies, such as the EPA here, to ensure that agency actions do not jeopardize the survival and recovery of species protected by the ESA or destroy or adversely affect their critical habitat. 16 U.S.C. § 1536(a)(2). Secretary Haaland oversees FWS and is ultimately responsible for FWS's completion of ESA consultation. In this action, the Center is suing Secretary Haaland in her official capacity as Secretary of the Interior.

## LEGAL BACKGROUND

### I.    The Administrative Procedure Act

17.    Pursuant to the Administrative Procedure Act ("APA"), a reviewing court "shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The APA requires that all federal agencies address matters "within a reasonable time," and "[w]ith due regard for the convenience and necessity of the parties or their representatives." 5 U.S.C. § 555(b). Where an agency action is unreasonably delayed the court shall compel the agency to act in a reasonable time. 5 U.S.C. § 706(1).

## II.     The Endangered Species Act

18.     Congress enacted the ESA, in part, to provide a "means whereby the ecosystems upon which endangered species and threatened species depend may be conserved . . . [and] a program for the conservation of such endangered species and threatened species . . . ." 16 U.S.C. § 1531(b). The Supreme Court observed that "[t]he plain intent of Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever the cost," and that in passing the law, Congress "intended endangered species to be afforded the highest of priorities." *Tenn. Valley Auth. v. Hill*, 437, U.S. 153, 174, 184 (1978).

19.     The Secretaries of Commerce and the Interior are charged with administering and enforcing the ESA, but they have delegated this responsibility to FWS and the National Marine Fisheries Service ("NMFS"). 50 C.F.R. § 402.01(b).

20.     Under Section 7 of the ESA, all federal agencies have a substantive duty to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [critical] habitat of such species . . . ." 16 U.S.C. § 1536(a)(2).

21.     To fulfill the substantive purposes of the ESA, federal agencies have a procedural duty under section 7(a)(2) to engage in consultation with FWS (and/or NMFS) before authorizing, funding, or engaging in any "action" that could "jeopardize the continued existence" of any listed species or "result in the destruction or adverse modification of habitat of such species ... determined ... to be critical." *Id.* § 1536(a)(2).

The determination of whether a pesticide registration may affect ESA-protected species is referred to as an "effects determination" or "biological evaluation" in EPA parlance.

22.     If the agency determines that its action is "likely to adversely affect" a listed species or critical habitat, the agency must engage in "formal consultation," as outlined in 50 C.F.R. § 402.14 ("Formal Consultation"). *Id.* § 402.14; *see also id.* § 402.02. Through consultation, FWS details how the agency action affects the listed species and their habitats and, if necessary, suggests reasonable and prudent alternatives to protect the species. 16 U.S.C. § 1536(b)(3).

23.     FWS has a procedural duty under the ESA to complete formal consultation on chlorpyrifos and diazinon by issuing a biological opinions. 16 U.S.C. § 1536(b)(3); (50 C.F.R. § 402.14(g),(h). The ESA establishes timelines for the consultation process to occur prior to agency action. 16 U.S.C. § 1536(a)(3) (consultation required "on any prospective agency action"); *Karuk Tribe of Cal. v. United States Forest Serv.*, 681 F.3d 1006, 1020 (9th Cir. 2012) ("duty to consult…before engaging in discretionary action"). Consultation shall be concluded within 90 days of the date on which it is initiated, or within such other period as mutually agreeable to the consulting and action agencies. 16 U.S.C. § 1536(b)(1)(A). When the action under review involves a permit or license applicant, the consulting agency and the action agency, must seek consent of the applicant for periods exceeding 150 or more days after the date on which consultation was initiated. *Id.* § 1536(b)(1)(B).

24.     The result of formal consultation is the issuance of a biological opinion. If FWS concludes in its biological opinion that a proposed action is not likely to jeopardize

the continued existence of a threatened or endangered species or result in the destruction or adverse modification of critical habitat, but may result in an "incidental take" of such species, then FWS determines whether to authorize the take of listed species through the issuance of an incidental take statement. 16 U.S.C. § 1536(b)(4). An incidental take statement must: (1) specify the impact of the incidental take on the listed species; (2) specify "reasonable and prudent measures" the agency considers necessary to minimize that impact; and (3) set forth mandatory terms and conditions. *Id.*

25.     If FWS concludes in its biological opinion that a proposed action is likely to jeopardize the continued existence of a threatened or endangered species or result in the destruction or adverse modification of critical habitat, it must propose reasonable and prudent alternatives, if any, that would avoid the jeopardy or destruction or adverse modification of critical habitat in order to meet the Section 7 substantive duty to avoid jeopardy or adverse modification. 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402.14(h)(2).

### III.     The Federal Insecticide, Fungicide, and Rodenticide Act

26.     EPA is responsible for the oversight of pesticide registration and use in the United States. Specifically, the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") charges EPA with registration, review, and ongoing oversight of chemicals for use as insecticides, herbicides, fungicides, rodenticides, fumigants, and other pesticides (collectively "pesticides") in the United States. 7 U.S.C. §§ 136-136y.

27.     EPA must register pesticide active ingredients and individual pesticide products offered for distribution or sale. 7 U.S.C. § 136a(a); 40 C.F.R. § 152.15. A FIFRA

registration is a license describing the terms and conditions under which the product can be legally distributed, sold, and used. FIFRA also requires that EPA periodically review registrations of pesticides. 7 U.S.C. § 136a(g)(A)(i). EPA must complete initial registration review of older pesticides by October 1, 2022. 7 U.S.C. § 136a(g)(A)(iii)(I).

## FACTUAL BACKGROUND

28.    Chlorpyrifos and diazinon are organophosphate insecticides, used as active ingredients in pesticide products designed to kill insects systemically and on contact. Organophosphates are a class of chemicals that are neurotoxins that inhibit normal brain and muscle function in exposed organisms.

29.    In March 2009, EPA formally initiated registration review for chlorpyrifos when it opened the registration review docket. EPA Dkt. #EPA-HQ-OPP-2008-0850-0001 (posted Mar. 17, 2009). In 2009, EPA anticipated completing registration review for chlorpyrifos in 2015. Chlorpyrifos Final Work Plan at 5, EPA Dkt. #EPA-HQ-OPP-2008-0850-0020.

30.    EPA notes in its Chlorpyrifos Proposed Interim Registration Review Decision that "FWS has not yet issued a [Biological Opinion] on chlorpyrifos." Chlorpyrifos Proposed Interim Registration Review Decision at 9, EPA Dkt #EPA-HQ-OPP-2008-0850-0971 (posted Dec. 8, 2020). EPA states further that it "plans to address risks to [ESA] listed species and critical habitats from use of chlorpyrifos as part of the final registration review decision, pending completion of the nationwide consultation process. *Id.* In other words, EPA will not implement protections for these species and critical habitats until FWS completes a biological opinion.

31.     Chlorpyrifos registered uses include a variety of non-food sites, including golf course turf, ornamental plants in nurseries, ear tags for cattle, wood treatments, industrial sites, greenhouses, sod farms. Chlorpyrifos is also registered for aerial and ground-based fogger treatments to control mosquitos, and residential uses for ant and roach bait products and fire ant mound treatments.

32.     Chlorpyrifos is also currently registered for use on many agricultural crops, with highest uses on corn, soybeans, alfalfa, oranges, wheat, and walnuts. However, in 2021, the Court of Appeals for the Ninth Circuit ordered EPA to revoke all chlorpyrifos tolerances of residues of chlorpyrifos or modify tolerances that EPA determined could meet the safety standard of the Federal Food, Drug, and Cosmetic Act ("FFDCA"). *League of United Latin Am. Citizens v. Regan*, 996 F.3d 673 (9th Cir. 2021).

33.     EPA issued a rule revoking all tolerances for residues of chlorpyrifos, including tolerances on food and feed crops, because it could not conclude that the risk from exposure from the use of chlorpyrifos meets the safety standard of the FFDCA. 86 Fed. Reg. 48315 (Aug. 30, 2021). The rule became effective on October 29, 2021, with the tolerances expiring on February 28, 2022. *Id.* The revocation of tolerances effectively eliminates use of chlorpyrifos on food and feed. However, some agricultural interests petitioned for review of EPA's rule. Petition, (Doc #5126162) *Red River Valley Sugarbeet Growers Ass'n et al. v. Regan*, No. 22-1294 (8th Cir. Filed Feb. 9, 2022). Petitioners in that matter moved for a partial stay of EPA's rule including for the following crops: alfalfa, apple, asparagus, cherry (tart), citrus, peach, soybean, strawberry, sugar beet, and wheat. *Id.*, Petitioners' Motion for a Partial Stay Pending Review (Doc #5126280). As of the filing

of this Complaint, Petitioners' motion for a partial stay is fully briefed, but the Eighth Circuit has not ruled on it.

34.     In June 2008, EPA formally initiated registration review for diazinon when it opened the registration review docket. EPA Dkt. #EPA-HQ-OPP-2008-0351-0001 (posted June 24, 2008). EPA has not made a proposed or final interim registration review decision for diazinon. In 2008, EPA anticipated completing registration review for diazinon in 2014. Diazinon Final Work Plan at 4, EPA Dkt. #EPA-HQ-OPP-2008-0351-0020.

35.     Diazinon is registered for restricted use on a select number of fruits, vegetables, nuts, ornamentals, and in cattle ear tags.

36.     The most recent meeting notes on the public docket between EPA and FWS (and registrants) concerning the ESA consultation on chlorpyrifos, diazinon, and malathion is dated April 19, 2018. EPA Dkt. #EPA-HQ-OPP-2008-0351-0108 (posted Dec. 15, 2020).

37.     EPA and FWS have long had difficulty in implementing the ESA's consultation requirements when registering pesticides under FIFRA. To address this deficiency, in 2011, EPA and the Departments of the Interior, Commerce, and Agriculture requested that the National Academy of Sciences convened a committee of independent experts to examine topics pertaining to approaches for assessing the effects of proposed FIFRA pesticide registration actions on endangered and threatened species and their critical habitats.

38.     In 2013, the National Academy of Sciences issued a report ("2013 Academy of Sciences Report") detailing the best approaches to be taken by federal agencies in

assessing the risk of pesticides under the ESA.

39.     Following the 2013 Academy of Sciences Report, EPA, FWS, and NMFS held five interagency workshops between August 2012 and September 2016 to develop the technical analyses included in the Biological Evaluations. During these workshops, EPA and FWS reached agreement on information required in the Biological Evaluation to support development of the Biological Opinion.

40.     In 2014, EPA, FWS, and NMFS represented to Congress that they intended to address ESA obligations for pesticide registrations "by conducting nationwide scale effects determinations" and that the agencies worked with litigants "to align lawsuits so that the agencies could focus on national level consultations on all ESA-listed species rather than focus on single species, or a small subset of species in smaller geographical areas." EPA and FWS agreed to complete the first three, pilot nationwide consultations on pesticide products containing chlorpyrifos, diazinon, or malathion.

41.     In 2014, EPA began to prepare its Biological Evaluations ("BE") to determine the effects of then actively-registered products containing chlorpyrifos, diazinon, or malathion.

42.     On April 11, 2016, EPA provided notice that its draft BEs for the registration review of all uses of chlorpyrifos, diazinon, and malathion were available for public comment until June 10, 2016. 81 Fed. Reg. 21341 (April 11, 2016).

43.     On January 18, 2017, EPA transmitted the three BEs to the FWS and NMFS to initiate the formal consultation process under Section 7(a)(2) of the ESA for species and critical habitat within each of the FWS' and NMFS' respective jurisdictions. Letter from

EPA to FWS and NMFS initiating ESA formal consultation for chlorpyrifos, diazinon, and malathion (Dec. 18, 2017); *see, e.g.,* EPA Dkt. #EPA-HQ-2008-0850-0933; *see also* EPA notice of "Availability of Final Biological Evaluations for Chlorpyrifos, Diazinon, and Malathion" (Dec. 18, 2017), EPA Dkt. # EPA-HQ-2008-0850-0934.

44.     In its BE for chlorpyrifos, EPA determined that registered uses of chlorpyrifos as authorized on pesticide labels are *likely to adversely affect* 1,778 of the total species analyzed (97% of species) and 780 of the total critical habitats analyzed (98% of critical habitats). EPA Consultation Letter at 2.

45.     In its BE for diazinon, EPA determined that registered uses of diazinon as authorized on pesticide labels are *likely to adversely affect* 1,437 of the total species analyzed (78% of species) and 385 of the total critical habitats analyzed (48% of critical habitats). *Id.*

46.     FWS, NMFS, and EPA had agreed to complete biological opinions on the three pilot nationwide consultations on the adverse effects of registered uses of pesticide products containing chlorpyrifos, diazinon, and malathion by December 2017. FWS and EPA further agreed to provide the draft biological opinions on chlorpyrifos, diazinon, and malathion to the public in May 2017 and to provide a 60-day period to comment on those draft biological opinions. FWS and EPA did not provide the draft biological opinions for public comment in May 2017.

47.     As of October 17, 2017, or earlier, FWS had completed draft Biological Opinions on the effects of chlorpyrifos, diazinon, and malathion as authorized for uses of each pesticide respectfully, as described on pesticide product labels. FWS planned to

transmit the Biological Opinions to EPA in mid- to late-October 2017. FWS expected EPA to provide public notice that the draft Biological Opinions would be available for a 60-day public comment period.

48.     In the October 2017 draft Biological Opinions, FWS determined that the uses of chlorpyrifos, diazinon, and malathion, as authorized by EPA, are likely to jeopardize the continued existence of certain endangered or threatened species and adversely modify critical habitats. A summary of FWS's draft conclusions stated that: chlorpyrifos would jeopardize 1,399 species (88% of species in FWS jurisdiction) and adversely modify 169 critical habitats (23% of critical habitats in FWS jurisdiction); diazinon would jeopardize 175 species (12% of species in FWS jurisdiction) and adversely modify 20 critical habitats (3% of critical habitats in FWS jurisdiction); malathion would jeopardize 1,284 species (81% within FWS jurisdiction) and adversely modify 163 (22% of critical habitats in FWS jurisdiction).

49.     The October 2017 draft Biological Opinions included Reasonable and Prudent Alternatives ("RPAs") that would avoid jeopardy to species and destruction or adverse modification of critical habitat through reasonable modifications to how and where chlorpyrifos, diazinon, and malathion were used. The RPAs in the October 2017 draft Biological Opinions include revising pesticide label language: to restrict pesticide usage in localized areas where certain listed species occur; to eliminate areas where pesticides are not anticipated to be used; to establish or increase buffers to reduce spray drift into areas where listed species may occur; and to improve required pesticide application equipment. The October 2017 draft Biological Opinions were never released to the public for

comment.

50.     FWS did not complete final biological opinions to complete consultation on chlorpyrifos, diazinon, or malathion by December 2017.

51.     Pursuant to a court-ordered deadline, on December 29, 2017, NMFS completed a final biological opinion on EPA's registration of chlorpyrifos, diazinon, and malathion.

52.     Not until April 2021, did EPA open a 60-day public comment period on FWS's then-current Draft Biological Opinion on Malathion. EPA Dkt. #EPA-HQ-OPP-2021-0001 (posted Apr. 19, 2021). This draft biological opinion did not include assessment of effects of chlorpyrifos or diazinon.

53.     Pursuant to litigation solely concerning malathion, FWS stipulated to a court-ordered deadline to issue its Final Biological Opinion and conclude the ESA Section 7(a)(2) Malathion Consultation no later than February 28, 2022, unless certain contingencies occur. Order approving Stipulated Partial Settlement Agreement, ECF No. 112, *Ctr. for Environmental Health, et al. v. Regan*, Case No. 4:18-cv-03197-SBA (N.D. Cal. Entered Jan. 4, 2022).

54.     Upon information and belief, as of the filing of this complaint, FWS has not released draft or final biological opinions for the nationwide consultations on the adverse effects of registered uses of pesticide products containing chlorpyrifos or diazinon to complete the consultations that EPA initiated on January 18, 2017.

55.     Five years have passed since EPA initiated these consultations on chlorpyrifos and diazinon. Since then, FWS has not completed any biological opinion or

recommended any measures necessary to ensure that registrations of uses of pesticide products containing chlorpyrifos or diazinon do not jeopardize the continued existence of endangered or threatened species or result in the destruction or adverse modification of designated critical habitat of these species.

**FIRST CLAIM FOR RELIEF**

**FWS IS UNREASONABLY DELAYING COMPLETION OF FORMAL CONSULTATION FOR CHLORPYRIFOS IN VIOLATION OF THE APA**

56.     All allegations set forth above in this Complaint are incorporated herein by reference.

57.     The APA dictates that agencies conclude a matter presented to it "within a reasonable time." 5 U.S.C. §555(b). Accordingly, APA section 706(1) authorizes reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1).

58.     FWS has a procedural duty under the ESA to complete formal consultation on chlorpyrifos by issuing a biological opinion. 16 U.S.C. § 1536(b)(3); (50 C.F.R. § 402.14(g),(h). The ESA establishes timelines for the consultation process to occur prior to agency action. 16 U.S.C. § 1536(a)(3). Generally, consultation shall be concluded within 90 days of the date on which it is initiated. 16 U.S.C. § 1536(b)(1)(A).

59.     In January 2017, EPA requested formal consultation with FWS for chlorpyrifos after determining that this pesticide was likely to adversely affect numerous listed species and critical habitats.

60.     Chlorpyrifos products continue to be sold and used in the United States.

61.   FWS's failure to complete ESA consultation on EPA's registration of the uses of pesticide products containing chlorpyrifos constitutes unreasonable delay of agency action, in violation of and as remedied by the APA. 5 U.S.C. § 555(b); 5 U.S.C. § 706(1).

**SECOND CLAIM FOR RELIEF**

**FWS IS UNREASONABLY DELAYING COMPLETION OF FORMAL CONSULTATION FOR DIAZINON IN VIOLATION OF THE APA**

62.   All allegations set forth above in this Complaint are incorporated herein by reference.

63.   The APA dictates that agencies conclude a matter presented to it "within a reasonable time." 5 U.S.C. §555(b). Accordingly, APA section 706(1) authorizes reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1).

64.   FWS has a procedural duty under the ESA to complete formal consultation on diazinon by issuing a biological opinion. 16 U.S.C. § 1536(b)(3); (50 C.F.R. § 402.14(g),(h). The ESA establishes timelines for the consultation process to occur prior to agency action. 16 U.S.C. § 1536(a)(3). Generally, consultation shall be concluded within 90 days of the date on which it is initiated. 16 U.S.C. § 1536(b)(1)(A).

65.   In January 2017, EPA requested formal consultation with FWS for diazinon after determining that this pesticide was likely to adversely affect numerous listed species and critical habitats.

66.   Diazinon products continue to be sold and used in the United States.

67.   FWS's failure to complete ESA consultation on EPA's registration of the

uses of pesticide products containing diazinon constitutes unreasonable delay of agency action, in violation of and as remedied by the APA. 5 U.S.C. § 555(b); 5 U.S.C. § 706(1).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment for the following relief:

1.      Declare that Defendants FWS and Secretary Deb Haaland are in violation of Section 555(b) of the APA by failing to complete the consultations, as required by the ESA, for chlorpyrifos and/or diazinon within a reasonable time;

2.      Issue an order compelling Defendants FWS and Secretary Deb Haaland to complete the required consultations, in accordance with Section 706(1) of the APA, within six months;

3.      Enjoin Defendants from use of chlorpyrifos and diazinon on lands within their jurisdiction until they have completed the chlorpyrifos and diazinon consultations;

4.      Award Plaintiff its attorneys' fees and costs pursuant to 28 U.S.C. § 2412; and

5.      Grant Plaintiff such additional and further relief as the Court may deem just and appropriate.

Respectfully submitted this 24th day of February, 2022.

/s/ Stephanie M. Parent
STEPHANIE M. PARENT
(*Pro Hac Vice*)
CENTER FOR BIOLOGICAL DIVERSITY
PO BOX 11374
PORTLAND, OR 97211
TEL: (971) 717-6404
EMAIL: SParent@biologicaldiversity.org

*COUNSEL FOR PLAINTIFF*