1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                      **FOR THE DISTRICT OF ARIZONA**

8

9    Center for Biological Diversity,              No. CV-22-00090-TUC-JCH

10                    Plaintiff,                    **ORDER**

11   v.

12   United States Fish and Wildlife Service, et

13   al.,

14                    Defendants.

15          In this case, Plaintiff Center for Biological Diversity (the "Center") is suing

16   Defendants United States Fish & Wildlife Service ("FWS" or the "Service") and Debra

17   Haaland in her official capacity as Secretary of the United States Department of the

18   Interior.[1] Plaintiff alleges Defendants have unreasonably delayed completing interagency

19   consultations on the pesticides chlorpyrifos, diazinon, carbaryl, methomyl,[2] atrazine, and

20   simazine in violation of the Endangered Species Act ("ESA") and the Administrative

21   Procedure Act ("APA"). Before the Court are the parties' cross-motions for summary

22   judgment (Docs. 34, 38). The issues are fully briefed (Docs. 41, 42), and oral argument

23   occurred on December 12, 2024, *see* Doc. 46.

24          Plaintiff's Motion for Summary Judgment asked the Court to impose a January 15,

25   2025 deadline for FWS to complete consultation on all six pesticides. Defendants' Cross-

26   ---

   [1] Debra Haaland is no longer the Secretary of the Interior. Pursuant to Federal Rule of Civil
27   Procedure 25(d), Doug Burgum is automatically substituted in her place.
   [2] FWS completed interagency consultation on methomyl on December 30, 2024, according
28   to its estimated timeline. *See* Doc. 47. Plaintiff's request for a court-imposed deadline for
   the methomyl consultation is now moot. The Court includes references to the methomyl
   timeline for context only.

Motion for Summary Judgment offers a series of dates by which they estimate FWS could realistically complete the consultations: March 31, 2025, for carbaryl; March 31, 2026, for atrazine and simazine; and September 30, 2028, for chlorpyrifos and diazinon. Plaintiff's Response and Reply asks the Court to order FWS to adhere to its estimated timelines for carbaryl, atrazine, and simazine. But Plaintiff disagrees with Defendants' September 30, 2028 completion date for the chlorpyrifos and diazinon consultations. Plaintiff asks the Court to instead order FWS to complete the chlorpyrifos and diazinon consultations by June 30, 2027. For the reasons set forth below, the Court will grant in part Plaintiff's Motion for Summary Judgment, deny Defendants' Cross-Motion for Summary Judgment, and order FWS to complete consultation on each pesticide according to Defendants' proposed timelines.

## I.    Background

### A. Statutory and Regulatory Framework

This case arises out of FWS's obligations under Section 7 of the ESA. The ESA is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). It was enacted to "halt and reverse the trend towards species extinction, whatever the cost." *Id.* at 184. Pertinent here is Section 7(a)(2), which requires federal agencies to,

> in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [critical] habitat of such species . . . .

16 U.S.C. § 1536(a)(2). FWS and National Marine and Fisheries Service ("NMFS") share responsibility for administering the ESA and serve as the consulting agencies for endangered or threatened species under their respective jurisdictions. *See* 50 C.F.R. § 401.02.

Relevant here, if a federal agency determines a prospective agency action "may affect a listed species or habitat" within FWS's jurisdiction, the agency must initiate formal consultation with FWS. *See* 50 C.F.R. § 402.14(a). The agency, here the Environmental

- 2 -

Protection Agency ("EPA"), makes this determination by conducting a biological evaluation ("BE").[3] To complete formal consultation, FWS responds to the BE with a biological opinion ("BO") establishing the likelihood of jeopardy to protected species and habitats and suggesting reasonable alternatives or cautionary measures to reduce adverse impact. 16 U.S.C. § 1536(b)(3)(A).

When an agency initiates formal consultation, it must include a description of the proposed action, providing sufficient detail to allow FWS to "assess the effects of the action on listed species and critical habitat." 50 C.F.R. § 402.14(c)(1)(i). The "effects of the action" are those consequences that are "reasonably certain to occur." 50 C.F.R. § 402.02. The agency must provide FWS with "the best scientific and commercial data available or which can be obtained during the consultation for an adequate review of the effects that an action may have upon listed species or critical habitat." 50 C.F.R. § 402.14(d); *see also* 16 U.S.C. § 1536(a)(2) ("In fulfilling the requirements of this paragraph each agency shall use the best scientific and commercial data available.").

Section 7 requires consultations to conclude within 90 days of initiation or "within such other period of time as is mutually agreeable" between the agency and FWS. 16 U.S.C. § 1536(b)(1)(A). If the prospective action involves a permit or license applicant, the extension cannot exceed 150 days from the consultation's initiation unless FWS and the agency obtain the applicant's consent for the extension. 16 U.S.C. § 1536(b)(1)(B). FWS can request an extension when it "determines that additional data would provide a better information base from which to formulate a biological opinion." *Id.*

 If the parties agree to extend formal consultation,

> the Federal agency shall obtain, to the extent practicable, that data which can be developed within the scope of the extension. . . . The Service's request for additional data is not to be construed as the Service's opinion that the Federal agency has failed to satisfy the information standard of section 7(a)(2) of the Act. If no extension of formal consultation is agreed to, the Director will issue a biological opinion using the best scientific and commercial data available.

---

[3] U.S. Env't Prot. Agency, *Revised Method for National Level Listed Species Biological Evaluations of Conventional Pesticides*, 6 (Mar. 12, 2020), https://www3.epa.gov/pesticides/nas/revised/revised-method-march2020.pdf.

1    *Id.*

2    **B. Factual Background[4]**

3           This dispute involves Defendants' completion (or lack thereof) of BOs for six

4    pesticides: chlorpyrifos, diazinon, carbaryl, methomyl, atrazine, and simazine**.** Doc. 34

5    at 2.[5] Chlorpyrifos, diazinon, carbaryl, and methomyl are insecticides used as active

6    ingredients in pesticide products. Doc. 35 ¶¶ 4, 34; Doc. 39 ¶¶ 4, 34. Atrazine and simazine

7    are herbicides used as active ingredients in pesticide products. Doc. 35 ¶ 53; Doc. 39 ¶ 53.

8    Chlorpyrifos, diazinon, carbaryl, and methomyl can be neurotoxic to animals. *See* Doc. 35

9    ¶¶ 6, 35; Doc. 39 ¶¶ 6, 35. Atrazine and simazine can "vary from slightly to highly toxic to

10   animals," Doc. 35 ¶ 54, though additional factors (e.g., level of exposure) impact whether

11   an animal may experience toxic effects, Doc. 39 ¶ 54. Consequences of animal exposure

12   to these pesticides can include impairment of behaviors, reproduction, and growth;

13   inhibition of normal brain and muscle function; loss of food sources and symbiotic

14   partners; and eventually, mortality. Doc. 35 ¶¶ 7, 35, 54; Doc. 39 ¶¶ 7, 35, 54. Though their

15   authorized uses vary, these pesticides are often applied on agricultural crops, golf courses

16   and other turf, and feed and food crops, among other surfaces. Doc. 35 ¶¶ 42–43, 50, 59,

17   62; Doc. 35 ¶¶ 42–43, 50, 59, 62. In its BEs initiating consultation, the EPA found that,

18   based on the then-current pesticide registrations, thousands of ESA-protected species and

19   habitats may be susceptible to harm from these pesticides. *See* Doc. 35 ¶¶ 9, 13, 36, 39, 55,

20   57; Doc. 39 ¶¶ 9, 13, 36, 39, 55, 57; *see also* AR 0011815–16, 0012140–41, 0012322,

21   0012374, 0012577, 0012684.

22          The EPA initiated registration review[6] for diazinon in June 2008, Doc. 35 ¶ 87;

---

23   [4] The parties agree on the material facts. *Compare* Doc. 35, *with* Doc. 39. Prior to filing

24   cross motions for summary judgment, the parties cooperated in filing an administrative
     record. *See* Doc. 40. Plaintiff's Motion for Summary Judgment preemptively argues that

25   because there has been no final agency action, the Court's review of Plaintiff's unreasonable
     delay claims is not limited to the administrative record. Doc. 34 at 24–25. Defendants do

26   not object to any of Plaintiff's evidence, *see generally* Docs. 38, 39. At oral argument, the
     parties agreed the facts are undisputed and the Court has everything it needs to issue a

27   ruling. Dec. 12, 2024 Oral Arg. Tr. 4:21–6:1. As such, the Court will base its review on
     both the administrative record and the declarations attached to the motions for summary

28   judgment.
     [5] All citations are to the ECF document page numbers unless otherwise specified.
     [6] Registration review is a process required under the Federal Insecticide, Fungicide, and

Doc. 39 ¶ 87, chlorpyrifos in March 2009, Doc. 35 ¶ 89; Doc. 39 ¶ 89, carbaryl and methomyl in September 2010, Doc. 35 ¶¶ 128, 130; Doc. 39 ¶¶ 128, 130, and atrazine and simazine in June 2013, Doc. 35 ¶¶ 150, 152, Doc. 39 ¶¶ 150, 152; *see also* AR 0021709– 12, 0021720–22, 0022344–47, 0022376–78. In July 2014, the EPA, FWS, and NMFS agreed to complete pilot nation-wide consultations[7] on chlorpyrifos and diazinon tentatively by December 2017 and carbaryl and methomyl tentatively by December 2018. Doc. 35 ¶ 78; Doc. 39 ¶ 78; *see also* AR 0022426–27. In February 2016, the agencies reaffirmed these deadlines and agreed to complete consultations on atrazine and simazine by December 2022. Doc. 35 ¶ 80; Doc. 39 ¶ 80; *see also* AR 0022474, 0022488.

FWS transmitted its final BO and completed consultation on methomyl on December 30, 2024. *See* Doc. 47. FWS has yet to complete formal consultation on chlorpyrifos, diazinon, carbaryl, atrazine, or simazine. To analyze the progression of each consultation, the Court will group the pesticides into three categories: chlorpyrifos and diazinon, carbaryl and methomyl, and atrazine and simazine.

Chlorpyrifos and Diazinon

In January 2017, the EPA initiated formal consultation with FWS by transmitting BEs on chlorpyrifos and diazinon. Doc. 35 ¶¶ 9, 13; Doc. 39 ¶¶ 9, 13; *see also* AR 0011815–16, 0012140–41. In the BEs, the EPA found the then-registered uses for chlorpyrifos were "likely to adversely affect" 97% of ESA-protected species and 98% of ESA critical habitats. Doc. 35 ¶ 9; Doc. 39 ¶ 9; *see also* AR 0011815–16. The EPA also found the then-registered uses of diazinon were "likely to adversely affect" 78% of ESA-protected species and 48% of critical habitats. Doc. 35 ¶ 13; Doc. 39 ¶ 13; *see also* AR 0012140–41. These effects determinations were based on the pesticides' maximum use authorized by the EPA and do not necessarily reflect how the pesticides are used in

Rodenticide Act ("FIFRA") during which the EPA revaluates a pesticide's authorization to be sold or distributed in the United States. *See* 7 U.S.C. § 136a(a), (g). The initiation of registration review signals a prospective agency action triggering the EPA's duties under the ESA. *See* Doc. 34 at 20.
[7] Prior to this agreement, formal consultation under the ESA had been limited to evaluating impact of prospective agency action on a species-by-species basis. *See* Doc. 39 ¶ 78. The consultations here involve all species and geographical areas under FWS's jurisdiction.

practice. *See* Doc. 39 ¶¶ 11, 15; *see also* AR 0014883.

In an October 2017 draft BO on chlorpyrifos, FWS preliminarily concluded the uses described in the chlorpyrifos BE would jeopardize 88% of ESA-protected species and adversely modify 23% of critical habitats. Doc. 35 ¶ 11; Doc. 39 ¶ 11; AR 0022546. In an October 2017 draft BO on diazinon, FWS preliminarily concluded the uses described in the diazinon BE would jeopardize 12% of ESA-protected species and adversely modify 3% of critical habitats. Doc. 35 ¶ 15; Doc. 39 ¶ 15; AR 0022546. During internal review, FWS became concerned about the legal consequences of issuing BOs analyzing the pesticides' maximum authorized use and not their actual use. Doc. 39 ¶¶ 11, 15. Because the ESA implementing regulations require FWS to analyze those effects that are "reasonably certain to occur," FWS determined it needed additional usage data from the EPA. *Id.* (quoting 50 C.F.R. § 402.02); *see also* Doc. 38 at 12. In December 2017, pursuant to a court-ordered deadline, NMFS issued a final BO on chlorpyrifos and diazinon. Doc. 35 ¶ 109; Doc. 39 ¶ 109. The EPA provided FWS with updated usage information on chlorpyrifos and diazinon in 2018. Doc. 38-1 ¶ 14. FWS has not issued final BOs on chlorpyrifos or diazinon to date. Doc. 35 ¶ 127; Doc. 39 ¶ 127.

There have been several updates to how chlorpyrifos and diazinon are used in practice since the EPA initiated consultation in 2017. *See generally* Doc. 39 ¶¶ 10–33. In August 2021, the EPA issued a final rule revoking all use of chlorpyrifos on food.[8] Doc. 35 ¶ 114; Doc. 39 ¶ 114. In June 2022, NMFS updated its BO on chlorpyrifos and diazinon, Doc. 35 ¶ 119; Doc. 39 ¶ 119; *see also* AR 0012960–4344, resulting in changed registrations for the pesticides, Doc. 38-1 ¶ 20. In October 2022, diazinon registrants voluntarily cancelled registrations for nine products. Doc. 35 ¶ 122; Doc. 39 ¶ 122. In 2023,

---

[8] In response to this rule, FWS "suspend[ed] work on development of the chlorpyrifos biological opinion" pending the EPA's final decision on approved uses. AR 0012959. The memorandum announcing the suspension stated FWS expected that "with the announced changes, EPA will complete a new risk assessment with the revised uses and subsequently reinitiate consultation at which point [FWS] would resume work on the biological opinion using EPA's revised risk assessment." *Id.* The rule was subsequently vacated by court order in November 2023. Doc. 35 ¶ 123; Doc. 39 ¶ 123. In response, the EPA confirmed in December 2023 that all chlorpyrifos tolerances would automatically resume effect. Doc. 35 ¶ 124; Doc. 39 ¶ 124.

diazinon registrants and the EPA reached an agreement for additional mitigation measures. Doc. 8-1 ¶ 29; *see also* AR 0014345–436, 0014458, 0014472–76.

In March 2020, the EPA revised the methodology used for its BEs to analyze the effects of the action reasonably certain to occur. *See* Doc. 39 ¶ 3; Doc. 38-1 ¶ 13. FWS plans to use information produced by this new methodology in its chlorpyrifos and diazinon BOs. Doc. 39 ¶ 3. Pursuant to a court order in another case with Plaintiff, the EPA expects to update its strategies to address vulnerable species that may be affected by insecticides ("insecticide strategies") by March 31, 2025. Doc. 38-1 ¶¶ 34–35; *see also* AR 0021511–22. The EPA is also currently completing a new risk assessment for diazinon, the results of which are expected in summer 2026. Doc. 38-1 ¶ 26. Accordingly, the EPA expects to provide FWS with supplemental information to its chlorpyrifos and diazinon BEs by March 31, 2027. *See, e.g.*, Doc. 39 ¶ 3. Based on the EPA's timeline, FWS expects to complete the chlorpyrifos and diazinon consultations by September 30, 2028. Doc. 38-1 ¶¶ 35, 57.

## Carbaryl and Methomyl

In March 2021, the EPA initiated formal consultation with FWS with BEs on carbaryl and methomyl. Doc. 35 ¶¶ 36, 39; Doc. 39 ¶¶ 36, 39; *see also* AR 0012322, 0012374. The carbaryl BE reported that carbaryl was "likely to adversely affect" 91% of ESA-protected species and 93% of critical habitats. Doc. 35 ¶ 36; Doc. 39 ¶ 36; *see also* AR 0012322. The methomyl BE determined that methomyl was "likely to adversely affect" 61% of ESA-protected species and 36% of critical habitats. Doc. 35 ¶ 39; Doc. 39 ¶ 39; *see also* AR 0012374.[9] In ESA Section 7(b) letters to extend formal consultation, FWS requested the EPA provide it with additional usage data among other information. Doc. 38-1 ¶¶ 47–48; AR 0012723–24, 0024353–54. The EPA agreed to the extension, and the agencies obtained the required consent from the registrants. *Id.*

NMFS issued a BO for carbaryl and methomyl in January 2024, resulting in changed registrations for both pesticides that are likely to have mitigated their effects.[10] Doc. 35

---

[9] Updated information resulted in "likely to adversely affect" determinations for 1,020 species and 281 critical habitats, slightly less than the number of "likely to adversely affect" determinations in the original 2021 BE. Doc. 39 ¶ 39.

[10] Additional label changes to both pesticides since 2021 have also likely contributed to

¶ 147; Doc. 39 ¶ 147; *see also* AR 0023558–73, 0024089–96. In July 2024, FWS released its draft methomyl BO. Doc. 39 ¶ 84; *see also* AR 0040181–402. On December 30, 2024, FWS transmitted its final methomyl BO to the EPA. Doc. 47. On December 26, 2024, FWS issued its draft carbaryl BO. *Id.* FWS now expects to complete consultation on carbaryl by March 31, 2025.[11] Doc. 38-1 ¶¶ 53, 57.

#### Atrazine and Simazine

In November 2021, the EPA initiated consultation with FWS with BEs on atrazine and simazine, finding atrazine was "likely to adversely affect" 56% of ESA-protected species and 41% of critical habitats,[12] and simazine was "likely to adversely affect" 55% of ESA-protected species and 40% of critical habitats. Doc. 35 ¶¶ 55, 57; Doc. 39 ¶¶ 55, 57; *see also* AR 0012577, 0012684. In ESA Section 7(b) letters to extend formal consultation, FWS requested the EPA provide it with additional usage data among other information.  Doc. 38-1 ¶¶ 47, 54; *see also* AR 0012756–68. The EPA agreed to the extension, and the agencies obtained the required consent of the pesticide registrants. *Id.* The EPA is currently providing the updated information on a rolling basis, Doc. 38-1 ¶ 49, and FWS expects to complete consultation on atrazine and simazine by March 31, 2026.[13] Doc. 38-1 ¶¶ 56, 57.

#### Relevant Context

While the formal consultations on these six pesticides have been pending, FWS has concluded consultation on three other pesticides. *See* Doc. 35 ¶ 84; Doc. 39 ¶ 84; *see also* AR 0014883–5213, 0015709–877. Along with chlorpyrifos and diazinon, the EPA also initiated consultation on malathion, another similar pesticide, in January 2017. Doc. 35 ¶¶ 93–94; Doc. 39 ¶¶ 93–94. After its initial BE, the EPA updated the usage information on malathion in 2018 and started to provide additional information pursuant to its revised

---

mitigation. *See* Doc. 39 ¶ 40; Doc. 38-1 ¶¶ 49–51.
[11] The EPA and the respective pesticide registrants have agreed to these deadlines. *See* Doc. 35 ¶¶ 137–39; Doc. 39 ¶¶ 137–39.
[12] Since the EPA transmitted its BE, there have been label changes for atrazine, likely resulting in some mitigation. Doc. 39 ¶ 55.
[13] The EPA and the respective pesticide registrants have agreed to this deadline. *See* Doc. 35 ¶¶ 165–66; Doc. 39 ¶¶ 165–66.

methodology in 2020. *See* Doc. 38-1 ¶ 14; *see also* AR 0014792–828, 0014898–99, 0021347–405. In 2018, malathion became the subject of litigation between the parties in another case, resulting in FWS stipulating to a deadline and issuing its malathion BO in February 2022. *See* Doc. 35 ¶ 116; Doc. 39 ¶ 116; *see also Ctr. for Env't Health v. Regan*, No. 4:18-cv-03197-SBA (N.D. Cal. Jan. 4, 2022). The malathion BO contained 19,000 pages of analysis. Doc. 38-1 ¶ 14. FWS also issued BOs for herbicides Enlist and Enlist Duo in November 2023. Doc. 35 ¶ 84; Doc. 39 ¶ 84; *see also* AR 0014883–5213, 0015709–877.

## II.  Legal Standards

### A.  Review Under the APA

The APA provides that all federal agencies must conclude matters presented to them "within a reasonable time." 5 U.S.C. § 555(b). Federal courts have jurisdiction to review mandatory agency action and "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Under the APA, a court may compel delayed agency action when the agency "(1) has 'a clear, certain, and mandatory duty' and (2) has unreasonably delayed in performing such duty." *Vaz v. Neal*, 33 F.4th 1131, 1136 (9th Cir. 2022) (citations omitted) (quoting *Plaskett v. Wormuth*, 18 F.4th 1072, 1082 (9th Cir. 2021)).[14] The issuance of equitable relief under section 706 of the APA "is an extraordinary remedy and [the Court] require[s] similarly extraordinary circumstances to be present before [it] will interfere with an ongoing agency process." *Biodiversity Legal Found. v. Norton*, 285 F. Supp. 2d 1, 12 (D.C. Cir. 2003) (alterations in original) (quoting *Cmty. Nutrition Inst. v. Young*, 773 F.2d 1356, 1361 (D.C. Cir. 1985)).

### B.  Summary Judgment

Summary judgment is required if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

---

[14] Defendants did not contest that FWS has a clear and certain duty to complete the pesticide consultations under 16 U.S.C. § 1536. Accordingly, the Court will only analyze unreasonable delay.

as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is a particularly appropriate tool for resolving claims challenging agency action. *See Occidental Eng'g Co. v. INS*, 753 F.2d 766, 770 (9th Cir. 1985).

**III.    Analysis**

Plaintiff brings six counts alleging FWS has violated Section 555(b) of the APA by unreasonably delaying completing consultation on six pesticides, justifying judicial intervention under APA Section 706(1). "[T]here is no *per se* rule as to what amount of time constitutes undue delay." *Oceana v. Bureau of Ocean Energy Mgmt.*, 37 F. Supp. 3d 147, 184–85 (D.C. Cir. 2014). Instead, the Court engages in a fact-specific inquiry to determine if agency action has been unreasonably delayed. *See Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 120 F.4th 606, 622 (9th Cir. 2024). To aid in this determination, the Ninth Circuit has adopted the "*TRAC*" balancing test. *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) ("*TRAC*"); *see Vaz*, 33 F.4th at 1137 (9th Cir. 2022). The test looks at six factors ("the *TRAC* Factors"):

> (1) the time agencies take to make decisions must be governed by a "rule of reason";
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

*TRAC*, 750 F.2d at 80 (citations and quotations omitted).[15]

The relevant factors here inform three core considerations: first, whether FWS's delay in completing consultation on the pesticides violates the rule of reason; second, the extent of the potential harm caused and interests prejudiced by the delay; and third, the

---

[15] Because the D.C. Circuit has "more frequently dealt with unreasonably delayed rulemakings," the Court will look to D. C. Circuit authority in explaining and applying the *TRAC* factors. *See Cmty. Voice v. EPA*, 878 F.3d 779, 788 (9th Cir. 2017).

1    impact of compelling agency action on other agency priorities. *See Milligan v. Pompeo*,

2    502 F. Supp. 3d 302, 317 (D.D.C. 2020) (first and second factors often considered

3    together); *In re Ctr. for Biological Diversity*, 53 F.4th 665, 671 (D. C. Cir. 2022) (third and

4    fifth factors often considered together). The Court will address these three inquiries in turn.

5            **A. The Rule of Reason**

6            The first *TRAC* factor, which provides that the time it takes for an agency to act

7    must be governed by a "rule of reason," is the "'most important' factor." *Vaz*, 33 F.4th

8    at 1138 (quoting *Cmty.* Voice, 878 F.3d at 786). There is no per se rule on what is

9    reasonable, but courts have repeatedly emphasized "a reasonable time for agency action is

10   typically counted in weeks or months, not years." *Id.* (internal quotations omitted) (quoting

11   *Nat. Res. Def. Council v. EPA*, 956 F.3d 1134, 1139 (9th Cir. 2020)). The second *TRAC*

12   factor, whether Congress has provided a timetable for action, can also inform a

13   reasonability inquiry. *TRAC*, 750 F.2d at 80. Accordingly, these factors are typically

14   considered together. *Milligan*, 502 F. Supp. at 317.

15           *1. Years-Long Delay*

16           Plaintiff argues FWS's years-long delay in completing consultation on each of the

17   pesticides is unreasonable given FWS's informal involvement years before the EPA

18   initiated formal consultation, its failure to release draft opinions created over seven years

19   ago, and that its sister agency, NMFS, has already completed consultation on four of the

20   six pesticides at issue. Doc. 34 at 28–29. The EPA initiated registration review under

21   FIFRA for diazinon and chlorpyrifos in 2008 and 2009 respectively, carbaryl and

22   methomyl in 2010, and atrazine and simazine in 2013. Doc. 35 ¶¶ 87, 89, 128, 130, 150,

23   152. Registering a pesticide is an agency action subject to the ESA consultation process.[16]

24   This means FWS has been or should have been aware of the potential need for formal

25   consultation on each of these pesticides for over 10 years but has yet to act. *See* Doc. 35

26   ¶ 86. This is despite the EPA and FWS's 2014 and 2016 agreements to complete the

27

28   ───────────────
     [16] *See Pesticide Registration and Endangered Species Consultation*, U.S. Fish & Wildlife
     Service,    https://www.fws.gov/library/collections/pesticide-registration-and-endangered-
     species-act-consultations.

consultations for chlorpyrifos and diazinon, carbaryl and methomyl, and atrazine and simazine by the end of 2017, 2018, and 2022 respectively.[17] Doc. 35 ¶¶ 78, 80.

Even disregarding the informal notice, formal consultation has been pending before FWS on these pesticides for at least three and a half years.[18] *See* Doc. 35 ¶¶ 9, 13, 55, 57; Doc. 39 ¶¶ 9, 13, 55, 57. FWS gives various reasons these consultations have not been completed, including changes to pesticide labels, a need for updated or additional information, and a lack of resources in the face of other priorities. *See generally* Doc. 38 at 20–28. It seems certain circumstances beyond Defendants' control have contributed to FWS's failure to complete these consultations. But these circumstances do not excuse the lengthy delays presented here.

Defendants cite several cases where courts have declined to find similarly lengthy timelines unreasonable, but none justify endorsing the years-long delay here. *See In re UMW Int'l Union*, 190 F.3d 545, 546, 556 (D. C. Cir. 1999) (finding that ordering an agency to conclude a rulemaking could "do more harm than good" where it would displace other rulemakings the parties agreed were of greater significance to health and safety); *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099, 1101–02 (D. C. Cir. 2003) (reversing an order directing agency action because the district court did not consider "'competing priorities' for limited resources," and there was no reason to upset the BIA's "first-come procedure"); *Grand Canyon Air Tour Coal. v. FAA*, 154 F.3d 455 (D. C. Cir. 1998) (declining to find unreasonable delay and order the "immediate imposition" of a drastic remedy that may have unintended consequences where Congress contemplated the development rather than implementation of a plan within the statutory timeframe); *Biodiversity Legal Found. v. Norton*, 285 F. Supp. 2d 1 (D.D.C. 2003) (declining to find a four-year delay unreasonable where there was no express statutory

---

[17] Completion of formal consultation requires the EPA to complete initiating BEs. The EPA did not release its BE for carbaryl and methomyl until years after the agencies had agreed to complete consultation, but the BEs for chlorpyrifos, diazinon, atrazine and simazine were released a year or more prior to the dates by which the agencies had agreed to complete consultation. *See* Doc. 35 ¶¶ 11, 13, 36, 39, 55, 57.

[18] EPA initiated formal consultation on atrazine and simazine about three and a half years ago, carbaryl and methomyl about four years ago, and chlorpyrifos and diazinon about eight years ago.

deadline, "reflect[ing] a general congressional priority" for other duties towards which the agency was directing resources); *Oceana v. Bureau of Ocean Energy Mgmt.*, 37 F. Supp. 3d 147, 178, 186 (D.C. Cir. 2014) (declining to find NMFS's delay in updating BOs on lease sales after the Deep Water Horizon oil spill unreasonable because they were a "narrow, circumscribed event in the [statutory scheme] that [would] have minimal impact on endangered species," and it was "unclear how any delay in NMFS's BO would harm the human environment").

This case is distinguishable from the cases above. These BOs involve nationwide consultations on pesticides with the potential to cause extensive harm. The Section 7 consultations are the "heart of the ESA," *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 495 (9th Cir. 2011), and FWS does not allege other consultations of greater significance are pending. There seem to be few competing priorities that would justify letting nationwide consultations that, based on the only data available could impact most protected species and habitats, languish for around eight years. Further, as discussed more extensively below, the Court is not reordering agency priorities or requiring FWS to act any sooner than Defendants believe is necessary to produce sound BOs. The Court is simply directing FWS to abide by its own proffered timelines.

### 2. Best Available Evidence

Defendants justify FWS's delay by detailing the ways the registrations and usage information have changed for chlorpyrifos and diazinon since the EPA initiated consultation, necessitating updated information. *See* Doc. 38 at 20–21.[19] For carbaryl,

---

[19] At oral argument, Defendants argued "the clock has reset" on the chlorpyrifos and diazinon consultation timelines. *See* Dec. 12, 2024, Oral Arg. Tr. 36:15–19. According to Defendants, because chlorpyrifos and diazinon have new proposed actions, FWS's deadlines "are not triggered until [it] knows what [it] is consulting on." *Id.* Defendants cite no case law or statute to support their argument that registration changes over the eight years they have failed to complete consultation abrogates their statutory duty to perform those consultations. Defendants further fail to pinpoint a specific event that triggered a reset. The only evidence the Court has found is a 2021 FWS internal memorandum suspending development of the chlorpyrifos BO. *See* AR 0012959. The memorandum was issued in response to an EPA rule revoking all tolerance for use of chlorpyrifos on food. *See id.* Per the memorandum, FWS anticipated the EPA would "complete a new risk assessment with the revised [chlorpyrifos] uses and subsequently reinitiate consultation." *Id.* The EPA's rule revoking all tolerance for use of chlorpyrifos on food was overturned by court order in November 2023. *See* Doc. 35 ¶¶ 123–24; Doc. 39 ¶¶ 123–24. It is unclear

1   atrazine, and simazine, FWS emphasizes its need for "essential" additional information.

2   Doc. 38 at 21–22. Defendants are correct that the ESA's implementing regulations provide

3   that "[t]he Federal agency requesting formal consultation shall provide the Service with the

4   best scientific and commercial data available or which can be obtained during

5   consultation." 50 C.F.R. § 402.14(d). Further, "[w]hen the Service determines that

6   additional data would provide a better information base from which to formulate a

7   biological opinion, the Director may request an extension of formal consultation and

8   request that the federal agency obtain additional data to determine how or to what extent

9   the action may affect the listed species or critical habitat." 50 C.F.R. § 402.14(f).

10      The "best available evidence" requirement does not, however, require or authorize

11   unlimited delay in pursuit of the most up-to-date data. "The purpose of the best available

12   evidence standard is to prevent an agency from basing its action on speculation and

13   surmise." *San-Luis & Delta-Mendota Water Authority v. Locke*, 776 F.3d 971, 995 (9th

14   Cir. 2015). This does not mean an agency must "conduct new tests or make decisions on

15   data that does not yet exist." *Id.* Instead, an agency complies with the standard "so long as

16   it does not ignore available studies." *Id.*; *see also Desert Survivors v. U.S. Dep't of Interior*,

17   321 F. Supp. 3d 1011, 1041–41 (N.D. Cal. 2018) ("[W]here superior information is not

18   readily available, the 'best available science' requirement of the ESA does not 'insist on

19   perfection' and does not require the 'best scientific data possible.'") (quoting *Building Indus.*

20   *Ass'n v. Norton*, 247 F.3d 1241, 1246 (D.C. Cir. 2001)). Scientific findings in conservation

21   are "often necessarily made from incomplete or imperfect information." *Brower v. Evans*,

---

if FWS ever resumed work on the BO.

    Regardless of FWS's internal decision to suspend consultation, the need for
additional information does not dispense with the duty to complete consultation. *See* 50
C.F.R. § 402.14(f) (If the agencies agree to an extension for additional data "the Federal
agency shall obtain, to the extent practicable, the data which can be developed *within the
scope of the extension* . . . . The Service's request for additional data is not to be construed
as the Service's opinion that the Federal agency has failed to satisfy the information
standard of section 7(a)(2) of the Act. If no extension of formal consultation is agreed to,
the Director will issue a biological opinion using the best scientific and commercial data
available."). Here, FWS has not obtained an extension for the chlorpyrifos and diazinon
consultations. Even if it had, the ability to delay consultation to await additional data is not
unlimited, and formal consultation must eventually be completed with the "best scientific
or commercial data available."

257 F.3d 1058, 1070 (9th Cir. 2001); *see also id.* at 1071 ("Given the best available evidence standard . . . the Secretary cannot use insufficient evidence as an excuse for failing to comply with the statutory requirement.").

Courts have previously found "arbitrary and capricious" reliance on outdated data to form a BO. *Dow AgroSciences LLC v. Nat'l Marine Fisheries Serv.*, 707 F.3d 462, 472 (4th Cir. 2013) (finding an NMFS BO to be "arbitrary and capricious" where NMFS "recognized that it was relying on outdated data and that it had been presented with more recent data, but it chose to continue relying on the outdated data without explaining why"). Courts have also recognized "that an agency need not revise its action every time new data or a new model is announced because doing so 'would lead to significant costs and potentially endless delays in the approval process.'" *Id.* at 473 (quoting *Sierra Club v. EPA*, 356 F.3d 296, 308 (D.C. Cir. 2004)).

Defendants' claim that FWS's timeline for issuing each BO is "entirely dependent on when the EPA provides the necessary supplemental information" is exaggerated. *See* Doc. 42 at 20. NMFS receives the same information and BEs as FWS, *see* Dec. 12, 2024, Oral Arg. Tr.  51:25–52:19, and NMFS has completed consultation on chlorpyrifos, carbaryl, and methomyl, and updated its BOs on chlorpyrifos and diazinon. Doc. 35 ¶¶ 109, 119, 147; Doc. 39 ¶¶ 109, 119, 147. If NMFS can use the existing information to complete BOs without violating the best available evidence requirement, there seems to be no reason FWS cannot do the same. Section 7 provides FWS can request additional data that "*to the extent practicable* . . . can be developed *within the scope of the extension*." 50 C.F.R. § 402.14(f) (emphasis added). Accordingly, the argument that FWS *must* wait for data that has not yet been developed (or that might result from pending mitigation efforts and updated EPA methodology) is inconsistent with the statutory requirements. It is *because* Defendants have delayed action for so long that the EPA's original BEs may now be obsolete. That mitigation has occurred even without consultation is no excuse for FWS's continued failure to act.

///

3. *Congressional Timetable*

Plaintiff points to the ESA's provision setting a default timeline and intention for consultation to be completed prior to agency action as further evidence that FWS's delay is unreasonable. *See* Doc. 34 at 29–33. The ESA contemplates a 90-day timeline for FWS to conclude formal consultation. 16 U.S.C. § 1536(b)(1)(A). Some courts have interpreted Section 7's extension provision to mean the agencies "have a great deal of discretion in mutually setting their own timelines." *Oceana*, 37 F. Supp. 3d at 186. But "[t]he fact that the ESA allows for extension of the consultation timeline does not mean that any and all delay is reasonable." *Center for Environmental Health v. Wheeler*, 429 F. Supp. 3d 702, 716 (N.D. Cal. 2019). Otherwise, "delay in completing consultation [could] never be unreasonable." *Id.* "To so hold would be to sanction the perpetual delay of governmental obligations that are clearly mandated by law." *Id.* Here, FWS has followed the statutory requirements and extended its consultations on carbaryl, atrazine, and simazine. Doc. 35 ¶¶ 137–39, 165–66; Doc. 39 ¶¶ 137–39; 165–66. But these pesticides have already been registered, and the applicants have no incentive to expedite consultation. *See* Doc. 34 at 23 n. 6. This is not enough to make FWS's delay reasonable where originally three- to five-month timelines have now dragged on for years.

Even though the ESA does not mandate consultation always be completed in 90 days, the timetable provides an "indication of the speed with which it expects the agency to proceed." *TRAC*, 750 F.2d at 80. For EPA Section 7 consultations, that speed is months, not years. The purpose of these consultations further informs a reasonable timeline. Congress intended Section 7 consultations to evaluate agency action prospectively. 16 U.S.C. § 1536(a)(3) ("[A] Federal agency shall consult with the Secretary on any *prospective* agency action . . . ."); *In re Ctr. for Biological Diversity & Ctr. for Food Safety*, 53 F.4th 665, 671 (D.C. Cir. 2022) ("The ESA required EPA to issue an effects determination and engage in any required consulting *before* registering [the pesticide]."). Given this, it makes little sense that Congress would have contemplated that agencies should wait multiple years to act pending a consultation's conclusion.

Defendants correctly argue that when the current version of Section 7(b) came into effect, formal consultation was limited to assessing the impact of agency action on singular species.[20] *See* AR 0022426–27. The consultations here are "complex nationwide consultations" rather than "discrete, geographically-confined action[s]." Doc. 38 at 20–21. Given the resources required to complete a nationwide consultation, it is arguably infeasible for FWS to complete them within 90 days. Still, as illustrated by the draft BOs on chlorpyrifos and diazinon released for public comment nine months after the EPA initiated consultation, FWS has shown it can complete consultation within a year. *See* Doc. 35 ¶¶ 11, 15; Doc. 39 ¶¶ 11,15.

### B. Effects of Delay

*TRAC* factors three and five often overlap and direct the Court to consider the effect of agency delay. *In re Ctr. for Biological Diversity*, 53 F.4th at 671 (citing *In re Barr Laboratories, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)). Factor three instructs delay is "less tolerable when human health and welfare" are at stake, *TRAC*, 750 F.2d at 80, and courts have acknowledged ESA-protected species are "valuable to the health and welfare of the nation," *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 414 (D.C. Cir. 2004); *see also Tenn. Valley Auth.*, 437 U.S. at 178 ("[I]t is in the best interests of mankind to minimize the losses of genetic variations.").

The parties contest the extent to which delay in completing consultation is adversely impacting ESA species and habitats under FWS jurisdiction. Plaintiff cites to data in the EPA's original BEs and FWS's draft BOs, all of which are over three and a half years old. *See, e.g.*, Doc. 34 at 33 ("EPA determined that a substantial number of threatened and endangered species and critical habitats are likely to be adversely affected by uses of these pesticides."); Doc. 34 at 35 (citing to EPA BEs and FWS draft BOs completed in 2017 and 2021 for data on the percentage of studied species and critical habitats likely to be adversely affected by each pesticide). Defendants argue these figures do not accurately represent

---

[20] The agencies agreed to pilot the nation-wide consultations in 2014, over 20 years after the current version of 16 U.S.C. § 1536(b)(1)(A) was enacted. *See* Act of Nov. 23, 1988, Pub. L. No. 100-707, 102 Stat. 4689.

harm because the cited analyses "assessed a scope of actions under FIFRA that have now significantly changed and no longer reflect the registered uses or other restrictions contained in the label." Doc. 42 at 14.

It is true that without current usage information for each pesticide, it is impossible to know the exact extent of the harm they are causing to ESA-protected species and habitats. It is also true that given the mitigation efforts that have occurred in the absence of FWS's Section 7 action, the harm is likely less than predicted by the initiating BEs. But, given the nature of the pesticides' impact on animals and that they are often used concurrently, the harm is more than zero. *See* Doc. 38 at 31 ("The impacts on listed species and/or designated critical habitats are *likely narrower* now." (emphasis added)). The prejudice comes from FWS not fulfilling its obligations in the face of unknown harm. Further, as Defendants' arguments show, the pesticides' uses are constantly changing. *See, e.g.*, Doc. 38 at 24 ("Given the fact that the proposed registration actions for chlorpyrifos and diazinon changed (and continued to change) . . . ."); Doc. 42 at 8 ("Given EPA's ongoing registration reviews for these pesticides, there may be more changes to the labels."). The lack of current data and speculation that the BEs overestimated the harm is not enough to balance this factor in FWS's favor.  Were the Court to so hold, it would be nearly impossible to ever conclude that the effects of an agency's delay support intervention.

Defendants also argue requiring rushed consultations will produce "inferior and indefensible biological opinions that will likely be challenged, resulting in an even further delay" in issuing operative BOs, which is ultimately contrary to Plaintiff's interests. Doc. 38 at 32. This could be true were the Court to grant Plaintiff's initial request and order FWS to complete all the remaining consultations within six months. But Plaintiff no longer seeks a six-month deadline. Defendants have presented the Court with specific dates by which FWS estimates it can complete each BO. By directing FWS to abide by its own timelines, the Court is not ordering rushed opinions but instead ensuring external factors do not further derail the completion of already overdue consultations.

### C. Impact on Other Agency Priorities

*TRAC* factor four instructs the Court to consider the impact of judicial interference on higher or competing agency priorities. *TRAC*, 750 F.2d at 80. Courts are "generally cautious against facilitating line-jumping and reordering agency priorities." *In re Ctr. for Biological Diversity*, 53 F.4th at 672 (citation omitted). Ordering FWS to complete six complex, nation-wide consultations by Plaintiff's initial six-month deadline would be unreasonable and would disrupt FWS's other functions and priorities. *See* Doc. 38 at 29–30; *see also Oceana*, 37 F. Supp. 3d at 186 ("[A]n order compelling the agency to issue its BO immediately might undermine the entire process, and arguably have even harsher consequences than any delay."). But Plaintiff is no longer asking for this. Aside from the deadlines for the chlorpyrifos and diazinon consultations, Plaintiff asks the Court to enforce Defendants' own proposed timelines.

#### 1. Carbaryl, Atrazine, and Simazine

As to the pesticides on which the parties agree to the consultation timeline, Plaintiff is not asking to "cut the line" or force FWS to rearrange its priorities in Plaintiff's favor. Instead, Plaintiff seeks to compel FWS to complete consultation according to its own schedule. *See In re Ctr. for Biological Diversity*, 53 F.4th at 671 (finding the EPA had unreasonably delayed an effects determination and imposing a deadline "according to [the EPA's] own schedule"). Defendants allege enforcement is unwarranted, in part because the estimated schedule is "ultimately out of its control." Doc. 42 at 5.

Defendants' argument is flawed. FWS's unwillingness to commit to a firm deadline is the problem. When asked at oral argument whether their proposed schedule was speculative, Defendants could not assure the Court FWS would meet its deadlines, emphasizing that they were dependent on the EPA and out of FWS's control. Dec. 12, 2024, Oral Arg. Tr. 31:12–32:17. FWS has a history of not abiding by its self-imposed timelines. It has failed to abide by previously agreed to "estimated schedules" for these pesticides, missing some anticipated deadlines by as long as eight years. *See* Doc. 25 ¶¶ 78, 80;

Doc. 39 ¶¶ 78, 80.[21] Courts have previously found similar patterns to weigh in favor of intervention. *See NRDC v. U.S. Envtl. Prot. Agency*, 798 F.3d 809, 814 (9th. Cir. 2015) (granting a plaintiff's petition for mandamus against the EPA in part because "the agency has a significant history of missing the deadlines it has set in these proceedings"); *In re Ctr. for Biological Diversity*, 53 F.4th at 672 (ordering the EPA to abide by its proposed deadline and explaining the Court had "reason to doubt whether EPA will meet its own deadline" because the EPA did not commit to a deadline until after the plaintiff sought mandamus, the proposed timeline carried a caveat, and the EPA had no statutory obligation to make the effects determination). FWS has received permission to extend consultation from the EPA and the carbaryl, atrazine, and simazine registrants. With continued permission, FWS has no statutory obligation to meet the proposed deadline.[22] Were the Court not to order FWS to abide by its estimated dates, there would be no enforcement mechanism to ensure FWS does not ignore its anticipated completion dates indefinitely.

Although FWS surely intends to comply with its estimated timelines in good faith, the Court need not find bad faith to find unreasonable delay. *TRAC*, 750 F.2d at 80. The Court is aware FWS must balance competing priorities and duties, and circumstances may arise that impact FWS's prioritization of its Section 7 consultations. Still, "[t]he existence and completion of competing priorities does not relieve an agency from progressing with other clearly mandated duties." *Brower*, 257 F.3d at 1070. "[T]here is a limit to how long [an agency] may use these justifications to excuse inaction." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 191 (D.C. Cir. 2016) (internal quotation omitted); *see also Ctr. For Food Safety v. Regan*, 56 F.4th 648, 652 (9th Cir. 2022) (rejecting the EPA's justification for failing to comply with the ESA that it "lacked the resources to do so"). Given Section 7's importance to the ESA's statutory scheme, ordering compliance with FWS's self-imposed

---

[21] FWS issued its final methomyl BO and draft carbaryl BO in compliance with the estimated timelines set forth in this case. Given that this compliance occurred while litigation was pending, the Court still finds it appropriate to enforce the remaining deadlines.

[22] As discussed in Section III.A.3, the registrants for the various pesticides are unlikely to oppose further extending the consultation because the EPA has already registered these pesticides, providing the registrants no incentive to push FWS to complete consultation. *See* Doc. 34 at 23 n. 6.

1  dates best accomplishes the ESA's goals.

2      *2.  Chlorpyrifos and Diazinon*

3      That judicial enforcement of anticipated deadlines may be necessary does not mean

4  the Court should substitute Plaintiff's judgment for Defendants' expertise on when these

5  consultations can reasonably be completed. *See Sierra Club v. Thomas*, 828 F.2d 783, 797

6  (D.C. Cir. 1987), superseded by statute on other grounds, Pub. L. No. 101-549, § 707(f),

7  104 Stat. 2399, *as recognized in Humane Soc'y v. McCarthy*, 209 F. Supp. 3d 280

8  (D.D.C. 2016) ("[A]n agency's control over the timetable of a . . .  proceeding is entitled to

9  considerable deference." (internal quotation omitted)). Defendants estimate FWS can

10 complete consultation on chlorpyrifos and diazinon by September 30, 2028. Doc. 38 at 8.

11 The Center seeks to order FWS to complete the consultations by June 30, 2027. Doc. 41

12 at 7. Both parties justify their proposed deadlines based on when the EPA estimates it will

13 complete its supplemental BEs on chlorpyrifos and diazinon: March 31, 2027. *See* Doc. 38

14 at 16; Doc. 41 at 7. Defendants' timeline is based on their argument that FWS must

15 essentially draft BOs from scratch once it receives the updated information. "[T]he

16 substantial amount of work required to complete these two consultations, the Service's

17 overall anticipated workload in the next four to five years, and its limited budget and staff"

18 explain the longer timeline. Doc. 38 at 16. Plaintiff suggests a date 90 days after the EPA

19 plans to supplement its BEs: the timeline contemplated by 16 U.S.C. § 1536(b)(1)(A). *See*

20 Doc. 41 at 7. Plaintiff argues that even without the updated BEs, its deadline gives FWS

21 more than two years to consider the EPA's updated insecticide strategy in addition to the

22 years of time already passed. Doc. 41 at 13–14.

23     The Court will defer to FWS's experience on what is a reasonable timeline for

24 issuing the chlorpyrifos and diazinon BOs.  *See Biodiversity Legal Found.*, 285 F. Supp.

25 2d at 12 ("[R]espect for the autonomy and comparative institutional advantage of the

26 executive branch has traditionally made courts slow to assume command over an agency's

27 choice of priorities." (quotations omitted)); *Grand Canyon Air Tour Coal.*, 154 F.3d at 460

28 ("We defer to the agency's reasonable exercise of its judgment and technical expertise.").

The Court agrees the eight-year delay in completing consultation is unreasonable. But Section 7 does call for use of the "best available" data, 50 C.F.R. § 402.14(d), and the EPA has represented that updated data reflecting the actual usage of chlorpyrifos and diazinon is forthcoming, *see* Doc. 39 ¶ 3. If FWS, in its expertise, estimates it requires 18 months to adequately process and reflect that data in its BOs, the Court will defer to its timeline. *See Oceana*, 37 F. Supp. 3d at 186 (declining to order NMFS to issue a BO on a condensed timeline in part because "critical new data is being analyzed and a premature decision could undermine the time already put in and only threaten NMFS's ability to conduct a thorough and searching analysis") (internal quotations omitted)).

## V.    CONCLUSION

Defendants have unreasonably delayed completing ESA Section 7 consultations on the pesticides chlorpyrifos, diazinon, carbaryl, atrazine, and simazine in violation of Section 555(b) of the ESA. The Court will order FWS to issue biological opinions on carbaryl, atrazine, and simazine by the parties' mutually agreed upon deadlines provided in Defendants' Motion for Summary Judgment (Doc. 38). The Court will further order FWS to complete consultation and issue biological opinions on chlorpyrifos and diazinon by Defendants' proposed date of September 30, 2028. If FWS is unable to abide by these deadlines, Defendants may petition the Court for modification. The Court will consider modification of these deadlines if FWS documents that extraordinary circumstances not already presented to the court will prevent its compliance. On April 30, 2025, and every 180 days thereafter, Defendants shall advise the Court of FWS's progress on these matters. In these status reports, Defendants shall inform the Court whether the EPA is on schedule to provide the information FWS plans to use to inform its BOs.

## VI.    Order

Accordingly,

**IT IS ORDERED:**

1. **Granting in part** Plaintiff Center for Biological Diversity's Motion for Summary Judgment (Doc. 34).

2. **Denying as moot** Plaintiff Center for Biological Diversity's Motion for Summary Judgement (Doc. 34) as it relates to **methomyl** because FWS issued the biological opinion on December 30, 2024.

3. **Denying** Defendants U.S. Fish and Wildlife Service and Doug Burgum's Cross-Motion for Summary Judgment (Doc. 38).

4. **Declaring** Defendants have unreasonably delayed in completing ESA Section 7 consultations on chlorpyrifos, diazinon, carbaryl, atrazine, and simazine and are in violation of Section 555(b) of the APA.

5. **Directing** FWS to complete consultation on **carbaryl** and issue a biological opinion on or before **March 31, 2025.**

6. **Directing** FWS to complete consultation on **atrazine** and issue a biological opinion on or before **March 31, 2026.**

7. **Directing** FWS to complete consultation on **simazine** and issue a biological opinion on or before **March 31, 2026.**

8. **Directing** FWS to complete consultation on **chlorpyrifos** and issue a biological opinion on or before **September 30, 2028.**

9. **Directing** FWS to complete consultation on **diazinon** and issue a biological opinion on or before **September 30, 2028.**

10. **Directing** Defendants to provide the Court with status updates on the EPA's progress in providing updated information and FWS's progress in issuing the above-named final biological opinions on April 30, 2025, and every 180 days thereafter.

Dated this 12th day of March, 2025.

John C. Hinderaker
United States District Judge